461 A.2d 1253

**Robert WILSON, Appellant**

v.

**Yolanda BRAUN.**

**Yolanda BRAUN**

v.

**Robert WILSON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1982.

Filed May 13, 1983.

Reargument Denied July 22, 1983.

Frank S. Poswistilo, Easton, for appellant.

Thomas L. Walters, Easton, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

These consolidated appeals [1] arise out of a dispute between Yolanda Braun and Robert Wilson concerning Mr. Wilson's parental rights in Ryan Wilson, a child born to the couple when they were married. First, Robert Wilson brought a habeas corpus action against Yolanda Braun seeking visitation and partial custody of the child. Shortly after Mr. Wilson brought the habeas corpus action, Ms. Braun filed a petition under the Adoption Act [2] seeking an involuntary termination of Mr. Wilson's parental rights in the child. During termination proceedings Robert Wilson was allowed supervised visitation with the child.

Testimony was taken and on July 17, 1981, the hearing court issued an opinion and decree nisi terminating Robert Wilson's parental rights in his son. Mr. Wilson filed exceptions to the decree and asked for a rehearing. After another hearing the hearing court filed a second opinion and decree nisi; the second opinion modified a finding of fact but confirmed the termination of parental rights. Exceptions were taken again; the exceptions were denied by the court en banc and this appeal timely followed.

Robert Wilson and Yolanda Braun were married in 1965. Two children were born to the couple; Robert Wilson [3], and Ryan Wilson, who was born on October 31, 1974. Husband

1. On July 17, 1981, the Honorable Alfred T. Williams, Jr., President Judge of the Court of Common Pleas of Northampton County, issued an opinion and a decree nisi terminating Robert Wilson's parental rights in his son, Ryan. Judge Williams issued another opinion on January 6, 1982; this opinion confirmed the first decree nisi. Robert Wilson took exceptions to the second opinion and decree. The court en banc denied these exceptions on April 13, 1982; this appeal timely followed.

2. 23 Pa.C.S. § 2101 *et seq.*

3. Young Robert Wilson lives with his father and is not involved in these proceedings.

and wife separated on December 13, 1975, a little over a year after Ryan's birth. Robert Wilson and Yolanda Braun were divorced in June 1976 and both parties have since remarried.

Because the allegation that Robert Wilson neglected or refused to perform parental duties concerns events which took place after the couple's separation, the history of the family after 1975 will be recounted in some detail. As the lower court found, in 1975 Mr. Wilson left Christmas presents for both children on the porch of the home where the children lived. The father's lawyer advised him to stay out of the home to avoid antagonizing his wife.

Robert Wilson next saw Ryan at Easter 1976, while the boy was visiting with his paternal grandparents. The hearing judge describes the visit: "Inevitably, an argument between the parties developed in which the mother allegedly threatened that she would not permit visitation with the grandparents if the father was around." Slip op. at 3. The hearing judge also noted: "In June of 1976, the mother relinquished custody of the older child, Robby, to the father because of the child's expressed desire to reside with the father. It was out of fear of losing custody of young Ryan that the mother restricted visitation with the father." Slip op. at 3. When the father next visited Ryan, in October 1976, the mother agreed to allow visitation, but only in her presence. During this time Ryan was supported by his father.

In June of 1977 Robert Wilson consulted a lawyer to secure more regular visitation with Ryan and reported that the mother threatened to obtain custody of Robby, the older child, if Robert Wilson sought visitation with Ryan. The father decided not to litigate custody of the older child at that time, reasoning that Robby would soon be old enough to have a say in a custody dispute. Robert Wilson bought Ryan Christmas presents and birthday presents throughout the period since divorce.

Robert Wilson paid no child support from July 1977 to May 1978 but from May 1978 to the time of the hearing he paid support and reduced arrearages. The next contact between father and son occurred in June of 1978. Robert Wilson did not see Ryan from June 1978 to November 1980; the hearing judge stated "the mother refused visitation." Slip op. at 4. There was a period of court ordered visitation but, the hearing judge found that the supervised visitation was "largely unsuccessful due to the resistance and obstinance of the mother." Slip op. at 5.

In this appeal, Robert Wilson raises challenges to the sufficiency of the evidence to support the termination decree, the constitutionality of the use of an affirmative effort standard and the placing of the burden of proof upon him.

In his opinion the hearing judge states that under the Adoption Act "the party seeking to involuntarily terminate the parental rights of a natural parent must establish the statutory requirements by a preponderance of the evidence." Slip op. at 5. The hearing judge was without benefit of the decision of the Supreme Court in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In *Santosky*, the Court struck down a New York statute which allowed the state to terminate parental rights if a fair preponderance of the evidence supported a finding that a child was permanently neglected.

The Supreme Court held that use of a preponderance of the evidence standard in proceedings to terminate parental rights violates the due process clause of the fourteenth amendment. The Court noted that standards of proof reflect a social judgment allocating the risks of error in judicial proceedings. *Santosky v. Kramer*, 455 U.S. at 754, 102 S.Ct. at 1394, 71 L.Ed.2d at 607. Civil proceedings are governed by a preponderance of the evidence standard and the litigants share risks of error equally. Criminal proceedings are governed by the beyond a reasonable doubt standard and the citizen's interest in liberty requires that the state bear almost the entire risk of error. *Id.* at 755, 102

S.Ct. at 1395, 71 L.Ed.2d at 607–08. Because termination of parental rights affects a critical liberty interest the concept of fundamental fairness mandates use of an intermediate allocation of the burden of proof; due process is satisfied if the standard of proof is "clear and convincing evidence." *Santosky v. Kramer, supra* at 1395, 770, 102 S.Ct. at 1395, 1403, 71 L.Ed.2d at 608, 617.

Moreover, the Court stated:

Standards of proof, like other "procedural due process rules[,] are shaped by the risk of error inherent in the truth-finding process as applied to the *generality of cases,* not the rare exceptions." Since the litigants and the factfinder must know at the outset of a given proceeding how the risk of error will be allocated, the standard of proof necessarily must be calibrated in advance. Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard.

*Id.* at 757, 102 S.Ct. at 1396, 71 L.Ed.2d at 609. (citations and footnote omitted).

The section of the Adoption Act applicable here provides:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511.

In this case, the hearing judge found that "it cannot be denied that the mother has been extremely reluctant to permit extended visitation," and that "from the beginning the mother restricted visitation, permitting it only on her terms.... Finally, by the latter part of 1978 she stopped all visitation and discontinued all contact." Slip op. at 7.

Our review of the record in this case convinces us that even under the now rejected preponderance of the evidence standard, the proof adduced is insufficient to support a decision that Robert Wilson's lack of contact with Ryan demonstrated a settled purpose of relinquishing parental claim to Ryan or refusal or failure to perform parental duties within the meaning of section 2511(a) of the Adoption Act. Accordingly, we reverse the order terminating parental rights and remand for further proceedings on Robert Wilson's habeas corpus action wherein he seeks visitation and partial custody of Ryan.

In concluding that Robert Wilson did not make sufficient efforts to keep a place in Ryan's life the lower court en banc stated: "Robert Wilson had an obvious hold on his younger son which he could have utilized to enforce his visitation rights. Robert Wilson had custody of the older son, Robby; he could have refused or sought to limit Mrs. Braun's visitation of Robby until she allowed him reasonable visitation of Ryan." Slip op. at 3. This pronouncement is unaccompanied by citation to any decision of any Pennsylvania appellate court, no doubt for the excellent reason that our law does not sanction using children as hostages in custody disputes. No matter how bitter the dispute between Robert Wilson and Yolanda Braun over the custody of Ryan, young Robert Wilson could not be denied a relationship with his mother. It would have been improper for Robert Wilson to adopt the strategy suggested by the lower court en banc and it was most improper for the lower court to suggest any such method of enforcing visitation rights.

The order terminating parental rights is reversed. The case is remanded for further proceedings concerning the habeas corpus petition filed by Robert Wilson seeking visitation and partial custody.